IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DARREL REMILY and RANDAL HANSEN,** ) ) ) | |
| Plaintiffs, ) ) | No. 20-cv-7324 |
| v. ) ) | Judge Jeffrey I. Cummings |
| **FREEDOM DEVELOPMENT GROUP, LLC, et al.,** ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Darrel Remily and Randal Hansen bring this case against five corporate entities—Freedom Development Group, LLC ("FDG"), JET Park, LLC ("JET Park"), 901 Center Street Holdings, LLC ("901 Center"), JET Hospitals, LLC ("JET Hospitals"), and Star Real Estate, LLC ("Star Real Estate")—and certain of their alleged owners and agents—John Thomas, Kim Denkewalter, and Daniel Olswang—alleging breach of contract, conversion, fraud, breach of fiduciary duty, and claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961–68.

Defendants, except Denkewalter, move to: (1) strike portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f); and (2) dismiss the complaint pursuant to Rule 12(b)(6). (Dckt. #51). For the following reasons, defendants' motion to strike is denied and their motion to dismiss is granted in part and denied in part.

I.        THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT

The facts below are drawn from the allegations in the complaint, (Dckt. #1), (the "Complaint"), and the exhibits attached thereto.[1]

A.        The Parties.

Both plaintiff Remily and plaintiff Hansen are residents of South Dakota. (Complaint ¶¶6–7). Remily is a friend and associate of Hansen. (*Id.* ¶37).

Defendants Thomas, Denkewalter, and Olswang were or are the owners, managers, or registered agents of defendant FDG. (*Id.* ¶¶17, 22–23, 34). JET Park, 901 Center, JET Hospitals, and Star Real Estate (the "Entity Defendants") were formed by FDG's owners as vehicles to purchase, broker, and operate real estate. (*Id.* ¶¶18–21). The principal offices of FDG and the Entity Defendants are all located at the same address in Chicago, Illinois. (*Id*. ¶¶9–12).

B.        The Agreement to Form, and the Formation of, FDG.

In May 2017, Hansen and Thomas, while prisoners under the custody of the United States Bureau of Prisons in Minnesota, telephonically agreed with Denkewalter to form a corporate entity engaged in the business of purchasing and reselling real estate (the "Agreement"). (*Id.* ¶35). As part of the Agreement, Hansen agreed to secure a loan from Remily for $100,000 in exchange for a 25% ownership interest in the contemplated entity. (*Id.* ¶¶36, 40). Thomas and

---

[1] When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

Denkewalter also represented to Hansen that he would be included in "all [of the company's] future enterprises and investments." (*Id.* ¶40).

Despite the Agreement, Thomas, Denkewalter, and Olswang formed FDG—without Hansen—on May 22, 2017. (*Id.* ¶38). Although he had no ownership interest in FDG, Hansen nevertheless participated in conversations with Thomas and Denkewalter in May and June 2017 about FDG's first acquisition—real estate located in Grand Rapids, Michigan (the "Grand Rapids Property"). (*Id.* ¶39).

### C. Remily's Loan to FDG.

Around the same time that the parties were discussing the Grand Rapids Property, Hansen was also working on fulfilling his obligations under the Agreement. (*Id.* ¶¶39–42). To that end, Remily, at Hansen's request, sent Denkewalter a check for $100,000 in June 2017 though U.S. mail from South Dakota to Illinois. (*Id.* ¶42). Despite the fact that Remily loaned $100,000 to FDG at Hansen's behest, Hansen never received a 25% interest in FDG. (*Id.* ¶¶38, 70).

On or around the time that Remily sent the money, Thomas and FDG signed a document guaranteeing that FDG would repay Remily his $100,000 plus 10% either "at the close of the [Grand Rapids Property] or one year," whichever came first (the "Guaranty"). (Dckt. #1-2 at 2; *see also* Complaint ¶41). Despite the fact that the Grand Rapids Property purchase never materialized and over one year has passed since Remily loaned FDG the money, FDG has not repaid Remily as provided by the Guaranty. (Complaint ¶46).

### D. Additional Real Estate Acquisitions by FDG and the Entity Defendants.

Rather than applying the proceeds from Remily's loan toward the Grand Rapids Property, defendants used the money to fund other acquisitions, some of which were successful. (*Id.* ¶69).

3

Since May 2017, defendants have engaged in business ventures to secure other properties including a parking ramp in Minnesota, an Ecolab building in Minnesota, a site in Elgin, Illinois, and a site in Melrose Park, Illinois. (*Id.* ¶¶18–21, 47). Defendants did not include Hansen in these investments or acquisitions. (*Id.* ¶¶48, 70).

### E. Plaintiffs Filed this Case.

In December 2020, plaintiffs filed this lawsuit alleging breach of contract, conversion, fraud, and breach of fiduciary duty against Thomas, Denkewalter, Olswang, FDG, and the Entity Defendants. Plaintiffs further allege claims arising under RICO against all defendants except Denkewalter.

### F. The *Ziegler/Denkewalter* Lawsuit.

The Complaint also contains allegations which do not directly involve Hansen and Remily. Specifically, the Complaint alleges that in 2018, Denkewalter convinced non-party Michael Ziegler to loan $250,000 to FDG, via wire transfer, to facilitate the purchase of a parking ramp in Minnesota through JET Park. (*Id.* ¶50). Denkewalter later resigned as manager of FDG on September 13, 2018 and relinquished all but a 2% ownership interest in FDG. (*Id.* ¶51). Ziegler and Denkewalter then filed a lawsuit against FDG, the Entity Defendants, and several other defendants, alleging that they failed to pay their obligation of $250,000 plus interest to Ziegler and violated RICO . (*Id.* ¶¶50–51). Plaintiffs attach the *Ziegler/Denkewalter* complaint, (the "*Ziegler* Complaint"), as an exhibit to their complaint in this lawsuit. (Dckt. #1-2 at 6).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face" for each count at issue. *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544,

4

570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). However, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id.* Moreover, plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Twombly*, 550 U.S. at 545, 555.

### III. ANALYSIS

Defendants move to strike pursuant to Rule 12(f) and to dismiss pursuant to Rule 12(b)(6). The Court addresses defendants' arguments in turn below.

### A. Defendants Have Failed to Demonstrate that the *Ziegler* Complaint and Related Allegations Should Be Stricken.

Defendants move to strike from the Complaint any allegations regarding their alleged failure to repay Ziegler. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The decision to strike material is within the discretion of the court," *Tucker Firm, LLC v. Alise*, No. 11-CV-1089, 2012 WL 252790, at *2 (N.D.Ill. Jan. 25, 2012), and "the court will only grant a motion to strike if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party," *In re Abbott Lab'ys, et al. Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 3737, 2023 WL 4564592, at *5 (N.D.Ill. July 17, 2023). Courts generally disfavor and infrequently grant

motions to strike. *See, e.g., Meridian Sec. Ins. Co. v. Roberts*, No. 19-CV-00884-NJR, 2020 WL 1065465, at *1 (S.D.Ill. Mar. 5, 2020) ("As a general rule, motions to strike are disfavored and rarely granted because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic.").

Defendants argue that because they settled with Ziegler and paid him $275,000, "all reference[s] to the Ziegler matter must be stricken," the "Ziegler complaint [must be] withdrawn as an exhibit," and plaintiffs cannot rely on the alleged failure to pay Ziegler to establish their RICO claim. (Dckt. #51-1 at 3). This argument is unpersuasive.

Defendants cite to three exhibits—the Ziegler settlement agreement, a wire receipt from FDG to Ziegler's attorney for $275,000, and an affidavit signed by Thomas—to demonstrate that Ziegler was paid. Defendants failed to submit these exhibits with their motion and they are not before this Court. But, even if this Court were to accept defendants' representations that it paid Ziegler as true (which plaintiffs do not seem to dispute), defendants' argument still fails.

Another court in this District considered a virtually identical argument—raised by the same defendants who have been sued in this case—in *Denkewalter v. Thomas, et al.*, No. 20 C 5013, 2023 WL 3479165, at *5–6 (N.D.Ill. May 16, 2023). In *Denkewalter*, which was issued *before* the parties submitted their briefing in this case, defendants argued that "all references to the Ziegler matter must be stricken" and "Denkewalter [could not] rely on the alleged failure to pay Ziegler for his RICO claim." *Id.* at *5. Defendants attached the settlement agreement and wire receipt for $275,000 to their motion. *Id.* The *Denkewalter* court nevertheless rejected defendants' argument because, like here, defendants failed to cite any authority in support of their position and failed to explain "why paying Ziegler in 2021, after Ziegler initiated legal action against them, shows that [d]efendants did not fraudulently misappropriate his money in

6

2018." *Id.*. The *Denkewalter* court also rejected the suggestion—which defendants raise again here—that the plaintiff was seeking to impermissibly "resurrect" Ziegler's claims. *Id.*; Dckt. #56 at 3. Plaintiffs are not seeking payment of the money that was owed to Ziegler nor are they seeking liability on Ziegler's behalf.

To the extent that defendants argue that the Ziegler allegations are immaterial, that argument also fails. As the *Denkewalter* court pointed out, in the Seventh Circuit, "a plaintiff need not be harmed by each predicate act that makes up a RICO pattern of racketeering activity." *Id.* at *6, quoting RWB Services, LLC v. Hartford Computer Group, Inc.*, 539 F.3d 681, 686–88 (7th Cir. 2008). Thus, plaintiffs can "rely on the Ziegler allegations to establish a pattern, even if [they] were not personally harmed by the failure to pay Ziegler in 2018–2019." *Denkewalter*, 2023 WL 3479165, at *5. This Court agrees with the *Denkewalter* court's reasoning, finds that the *Ziegler* complaint and related allegations are relevant to the claims at issue here because they concern an alleged pattern of racketeering, and therefore denies defendants' motion to strike. *Id.* at *5–6 (denying defendants' motion to strike the Ziegler allegations).

### B. Defendants' Motion to Dismiss

Defendants also seek to dismiss certain portions of the Complaint for failure to state a claim.

#### 1. Plaintiffs Have Failed to Plead Their RICO Claims with Particularity.

Defendants assert that plaintiffs fail to sufficiently state a claim under RICO. The starting point for pleading fraud claims under RICO is Rule 9(b), which requires all averments of fraud to be stated with particularity. *Graue Mill Dev. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991). In particular, plaintiffs are required to plead in detail the "who, what, when, where, and how" of the circumstances constituting the fraud. *Wigod v. Wells Fargo Bank,*

*N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). At a minimum, a plaintiff must describe the "predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Since RICO liability is limited to defendants who have "personally committed" prohibited acts, a plaintiff must describe predicate acts of fraud "by each RICO Defendant with some specificity." *Guaranteed Rate, Inc. v. Barr*, 912 F.Supp.2d 671, 684 (N.D.Ill. 2012); *see Slaney*, 244 F.3d at 597–98.

Plaintiffs' Complaint falls short of this pleading standard in multiple ways. To begin, plaintiffs do not allege specific wrongdoing by the Entity Defendants. Instead, the Complaint makes broad references to incidents of mail and wire fraud but the only mailings or wire transfers described with any degree of specificity are the two loans sent to Denkewalter for $100,000 and $250,000 by Remily and Ziegler, respectively. (Complaint ¶¶42, 50). Next, plaintiffs generally allege that defendants transported and/or received money that was "improperly siphoned from Plaintiffs," without further details, (*Id.* ¶109), but these conclusory allegations "fail to specify the time, place and content" of any misrepresentations or action by the Entity Defendants and "therefore fall short of the particularity demanded by Rule 9(b)." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998).

Finally, plaintiffs disregard the general principle that a complaint's allegations should not lump multiple defendants together, and that the allegations must instead "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Specifically, plaintiffs allege RICO violations against each of the eight defendants and generally

8

refer to "the Defendants" in describing the alleged wrongful conduct but fail to identify which of the eight defendants are being accused of engaging in which predicate acts. For these reasons, plaintiff's RICO claims do not pass muster under Rule 9(b). *See Markovic v. TRU Funding LLC*, No. 21-CV-06628, 2023 WL 2612594, at *5 (N.D.Ill. Mar. 23, 2023) (dismissing RICO claims where plaintiffs did not allege specific wrongdoing against corporate defendants and treated all defendants as one); *see also Ko v. Univ. of Potomac at Chicago LLC*, No. 24 C 1455, 2024 WL 3694489, at *4 (N.D.Ill. Aug. 7, 2024) (dismissing claim subject to the heightened pleading standard of Rule 9(b) against corporate defendants that "were impermissibly lumped together.").

### 2. Remily's Conversion Claim is Waived and is Otherwise Barred by the *Moorman* Doctrine.

Defendants argue that Remily's claim for conversion must be dismissed under the "economic loss doctrine," also referred to as the "*Moorman* doctrine," because the losses he seeks to recover are based on defendants' alleged breach of contract. Plaintiffs failed to respond to defendants' argument, and they have therefore waived this claim. *See, e.g.*, *Sroga v. Rendered Servs. Inc.*, No. 19-CV-2299, 2019 WL 6173424, at *1 (N.D.Ill. Nov. 20, 2019) ("It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (recognizing that a complaint is subject to dismissal where a plaintiff does not file a response supporting the legal adequacy of the complaint).

Even if plaintiffs had not waived their conversion claim, the Court would still grant defendants' motion to dismiss under the *Moorman* doctrine. The *Moorman* doctrine prevents recovery for most tort claims when the damages are purely economic. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982). The doctrine applies to conversion claims

9

depending on the source of the duty breached, thus where the duty to the plaintiff arises from a contract, such claims may not proceed. *St George Invs. LLC v. QuamTel, Inc.*, No. 12-cv-9186, 2014 WL 812157, at *9–10 (N.D.Ill. Mar. 3, 2014) (collecting cases).

Here, Remily's conversion claim is based on a contractual duty. Specifically, Remily brings a breach of contract claim alleging that defendants failed to pay him under the Guaranty and that Thomas and FDG, through their personal guaranty, are liable for the sums thereunder. (Complaint ¶57). Remily's conversion claim incorporates his breach of contract allegations by reference, (*id.* ¶60), then alleges that defendants "asserted dominion over and withheld from Remily payment due under the Agreement and directed that monies owed be fraudulently withheld, converted and expended on real estate acquisitions and/or personal benefit to Defendants." (*Id.* ¶63). Thus, both the breach of contract and conversion arise from the exact same conduct: namely, defendants' failure to repay Remily under the terms of the Guaranty. Accordingly, Remily's conversion claim is barred by the *Moorman* doctrine and must be dismissed on its merits. *See ACW Flex Pack LLC v. Wrobel*, No. 22-CV-6858, 2023 WL 4762596, at *14 (N.D.Ill. July 26, 2023) (concluding conversion claim was barred by the *Moorman* doctrine where the claim incorporated the breach of contract allegations by reference and defendants' duty was based on his contractor agreement); *St George Invs. LLC*, 2014 WL 812157, at *9 (dismissing conversion claims where defendant allegedly breached the agreement by failing to pay on time and plaintiff brought claims for both breach of contract and conversion arising from the exact same conduct).

### 3. Hansen's Breach of Contract Claim is Not Barred by the Statute of Frauds.

Next, defendants argue that Hansen's breach of contract claim is barred under the statute of frauds for two reasons—the alleged oral agreement could not be performed within one year, and alternatively, it involved an interest in real estate. Neither argument is availing.

The Court first turns to defendants' temporal argument. Under Illinois' statute of frauds, "[an oral] contract is unenforceable only if it is impossible to perform the contract within one year." *Hartbarger v. SCA Servs., Inc.*, 558 N.E.2d 596, 606 (Ill. 1990). Courts have interpreted this to mean that where the alleged agreement is *capable* of performance within one year, the statute of frauds is inapplicable. *Id.*

Per the Complaint, Hansen—under the Agreement—would be granted ownership in the formed company and included in all of the company's future acquisitions and investments. While defendants assert that Hansen was not granted an ownership interest in FDG within a year of the Agreement, they do not persuasively explain how it was *impossible* for FDG to grant Hansen his ownership in that time frame. Defendants' argument that Hansen could not be granted ownership within one year is directly at odds with the allegations in the Complaint which indicate that other individuals, (namely Thomas, Denkewalter, and Olswang), *were* granted ownership interests in FDG the same month the parties made the alleged oral agreement. (Complaint ¶17).

Defendants also fail to persuasively explain how it was *impossible* for FDG to complete all its future acquisitions and investments within one year. Defendants liken this case to *Chiappe-Kay v. Barthel*, where the Illinois Appellate Court determined that the plaintiff's agreement to sell the defendant tickets to at least one football game per year contemplated a lifelong transfer of tickets which could not be performed within a year. 2013 IL App (2d)

11

120975-U, ¶21. But the Complaint does not allege any similar lifelong agreement, and defendants' mere suggestion that FDG would complete acquisitions and investments extending beyond one year is insufficient to demonstrate that performance within one year was *impossible*, as required to invoke the statue of frauds. *See Hartbarger*, 558 N.E.2d at 606 (holding that while a $200,000 payment to be made as part of an alleged oral agreement was scheduled to be made in three transactions over a course of several years, the payment could have been made within one year, and statute of frauds therefore did not apply); *see also Indus. Specialty Chems., Inc. v. Cummins Engine Co.*, 902 F.Supp. 805, 810 n.5 (N.D.Ill. 1995) (holding that although alleged oral agreement for sale of chemicals did not specify duration, performance could have occurred within one year so Illinois statute of frauds did not apply).

Defendants also contend that the statute of frauds bars the parties' oral agreement because the alleged partnership involves the sale of real estate. However, this argument is contrary to Illinois law.

> In Illinois, . . . joint ventures and partnerships formed for the development of real estate are generally exempt from the Statute of Frauds. *Harmon v. Martin,* 71 N.E.2d 74, 82 (Ill. 1947) (stating that "such an agreement is not within the Statute of Frauds"); *Fitch v. King,* 116 N.E. 624, 624 (Ill. 1917) (holding that "an agreement for a partnership for the purpose of dealing and trading in lands for profit is not within the Statute of Frauds, and the existence of the partnership and the extent of each party's interest in it may be shown by parol [evidence]"); *VanHousen v. Copeland,* 54 N.E. 169, 172 (Ill. 1899) ("An oral agreement to form a partnership for the purpose of trading in real estate for profit is not within the Statute of Frauds").

*Barnett v. Poag & McEwen Lifestyle Centers-Deer Park Town Ctr.*, No. 98 C 7783, 1999 WL 691850, at *4 (N.D.Ill. Aug. 26, 1999) (cleaned up). Defendants cite no precedent to the contrary, and the Court denies their motion to dismiss Hansen's breach of contract claim based on the statute of frauds.

### 4. Hansen's Fraud Claim is Waived.

Defendants argue that Hansen's fraud claim must be dismissed because the alleged misrepresentations—"to form a corporate entity," (Complaint ¶35), and to "be included in the ownership of FDG and all [its] future enterprises and investments," (*id.* ¶40))—amount to promissory fraud, or a promise of future conduct, which Illinois does not recognize as actionable. (Dckt. #51-1 at 10–11); *see HPI Health Care Servs. v. Mt. Veron Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989). Rather than directly respond to defendants' promissory fraud arguments in their response brief, plaintiffs raise new arguments and legal theories, specifically that they adequately pled the existence of a "collusive scheme" to defraud involving "the coordinated securing of loans from Remily and Ziegler through and with intermediaries . . ." (Dckt. #55 at 7). Plaintiffs fail to address defendants' promissory fraud argument and their failure to do so results in the waiver of that claim. *See Sroga*, 2019 WL 6173424, at *1; *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005).

In any event, even if the Court were to consider the theories raised in the Complaint and the new theories that plaintiffs raise in their brief, it nevertheless finds them unpersuasive. The Seventh Circuit has recognized that promissory fraud is actionable "if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *J.H. Desnick, M.D. v. American Broadcasting Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). To invoke the scheme exception, the plaintiff must allege and then prove that, at the time the promise was made, the defendant did not intend to fulfill it. *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) ("In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If he

13

cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief.") (cleaned up).

Plaintiffs fail to allege that at the time defendants made the purported promises they had no intention of honoring them. The Complaint does allege that Hansen was never granted an ownership interest in FDG and was excluded from FDG's future investments, (Dckt. #1 ¶70), and plaintiffs' brief states that defendants refused to return Remily's money and instead, used the funds for their own personal benefit, (Dckt. #55 at 8). But the fact that defendants "subsequently broke a promise is not evidence that [they] never intended to keep that promise when made. At most this is evidence of breach of contract, not fraud." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1007 (7th Cir. 2004) (cleaned up). Fraud "requires a showing of deception at the time the promise is made,"—a showing plaintiffs fail to make here. *Id.*; *see also BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 137 (7th Cir. 2011) ("[T]he fact that a party breaks a contract doesn't show that its promise to perform it had been fraudulent when made—that is, that the party had never intended to perform it."). Plaintiffs' fraud claim is therefore dismissed.

### 5. Hansen's Breach of Fiduciary Duty Claim is Dismissed Because Hansen Has Not Alleged a Fiduciary Relationship.

Defendants argue that Hansen's breach of fiduciary duty claim should be dismissed because plaintiffs fail to identify a fiduciary relationship between Hansen and defendants. The Court agrees. The Complaint does not contain any allegations which establish a traditional fiduciary relationship between Hansen and defendants, (e.g., attorney-client, employer-employee, trustee-beneficiary, etc.), and plaintiffs do not cite any case law to demonstrate that a fiduciary relationship is created when individuals agree to form a corporation that they plan to use to engage in future business ventures. To the contrary, "normal trust between friends or

businesses" even where there is "a slightly dominant business position, do[es] not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship." *See Carey Electric Contracting, Inc. v. First National Bank of Elgin*, 392 N.E.2d 759, 763 (Ill. 1979); *Oil Exp. Nat., Inc. v. Burgstone*, 958 F.Supp. 366, 370–71 (N.D.Ill. 1997) (citing *Carey*). Hansen's breach of fiduciary duty claim is therefore dismissed.

### 6. Defendants' Arguments Fall Short of Showing that the Claims Against the Entity Defendants Should be Dismissed.

Plaintiffs seek to pierce the corporate veil of the Entity Defendants to hold them liable for the acts of FDG, Thomas, and Denkewalter. Although a corporation "is separate and distinct as a legal entity from its shareholders, directors and officers and, generally, from other corporations with which it may be affiliated," *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981), courts may pierce a corporation's veil "when an individual or entity uses a corporation merely as an instrumentality to conduct that person's or entity's business," *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (cleaned up). Illinois law permits veil piercing where: (1) "there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist," and (2) "circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Buckley v. Abuzir*, 8 N.E.3d 1166, 1170 (Ill.App. 2014) (cleaned up).

Plaintiffs allege that the Entity Defendants were "a mere alter ego of FDG" and that they have "shared ownership, shared agents, shared management, and shared office space." (Complaint, ¶¶18-21; Dckt. #55 at 13). Plaintiffs also point out that the *Ziegler* complaint attached to the Complaint provides additional specifics about how the various entities commingled proceeds from the sale of properties. (Dckt. #55 at 13). Defendants, on the other

15

hand, assert that plaintiffs fail to plead sufficient facts to "pierce the corporate veil" of the Entity Defendants and hold them liable for the acts of FDG, Thomas, Denkewalter.

Defendants raised a similar argument in *Denkewalter*. There, like here, defendants described the allegations against the Entity Defendants as "general accusations" that "at all relevant times, each Entity Defendant was a mere alter ego of FDG." *Denkewalter*, 2023 WL 3479165 at *8; *compare* Dckt. #51-1 at 4. The *Denkewalter* court rejected defendants' argument concluding that defendants "overgeneralize[d] the allegations concerning the [Entity Defendants], skirt[ed] over the specific allegations laid out in the SAC describing how they acted as 'alter egos' for FDG and/or Thomas and Olswang," and "even acknowledge[d] that the Ziegler allegations 'link' the Entity Defendants to the claims at issue." *Denkewalter*, 2023 WL 3479165 at *9. Defendants repeat these actions here, including their admission that the Ziegler allegations "link" the Entity Defendants to the claims raised in the Complaint. (Dckt. #56 at 5–7). This Court once more agrees with *Denkewalter* and rejects defendants' argument for dismissal of the Entity Defendants.

### 7. Plaintiffs' Claims Against Olswang Are Waived.

Defendants argue that the claims against Olswang must be dismissed because the Complaint alleges no specific facts tying Olswang to the alleged wrongful conduct. Instead, the Complaint merely alleges that Olswang: (1) was the registered agent and/or manager for several of the corporate defendants; and (2) jointly engaged in the acts of FDG, Thomas, and Denkewalter. Plaintiffs fail to respond to defendants' argument and their claims against Olswang are thereby waived. *See Sroga*, 2019 WL 6173424, at *1; *see also U.S. v. Holm*, 326

16

F.3d 872, 877 (7th Cir. 2003) ("It is not the obligation of this court to research and construct the legal arguments open to parties," and "perfunctory and undeveloped arguments" are waived.).

## CONCLUSION

For the reasons stated above, defendants' motion, (Dckt. #51), is granted in part and denied in part. Defendants' motion to strike is denied. Plaintiffs' RICO claim, conversion claim, fraud claim, claim for breach of fiduciary duty, and claims against defendant Olswang are dismissed without prejudice. Defendants' motion to dismiss the Entity Defendants is denied. Plaintiffs are granted until June 18, 2025 to file an amended complaint, to the extent that they can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11.

**DATE: May 28, 2025**

_____
**Jeffrey I. Cummings
United States District Court Judge**